***NOT FOR PUBLICATION***

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| NANDA KAR and SILPY KAR, | : | |
| | : | |
| Appellants, | : | Civil Action No. 19-19065 (FLW) |
| | : | |
| v. | : | |
| | : | **OPINION** |
| THOMAS ORR, | : | |
| | : | |
| Appellee. | : | |

**WOLFSON, Chief Judge**

Pursuant to 28 U.S.C. §158(a)(1) and Rule 8001 *et seq.* of the Federal Rules of Bankruptcy Procedure, *pro se* appellants Nanda Kar and Silpy Kar (collectively, the "Appellants") filed this appeal of the Bankruptcy Court's Order dismissing their adversary complaint against their former Chapter 7 Bankruptcy Trustee, Thomas Orr ("Appellee" or the "Trustee"). Before the Court are the Appellants' brief (*see* ECF No. 1), the Appellee's opposition (*see* ECF No. 8), and the Appellants' reply brief (*see* ECF No. 10). For the reasons set forth below, Appellants' appeal is **DISMISSED**.

**I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

On December 22, 2015, Appellants filed a petition for bankruptcy under Chapter 7 of the United States Bankruptcy Code. (*See* Appellants' Reply Br. ¶ 2A, ECF No. 10; Appellee's Br. at 3, ECF No. 8; Chapter 7 Bankr. Pet., Bankr. Dkt. 15-33808, ECF No. 1.) On December 23, 2015, Thomas Orr was appointed as Chapter 7 Trustee. (Appellee's Br. at 3, ECF No. 8; Appoint. of Trustee, Bankr. Dkt. 15-33808, ECF. No. 4.) The §341(a) meeting of creditors was held on January 25, 2016, and continued to February 24, 2016. (Appellee's Br. at 3, ECF No. 8; Appoint.

of Trustee, Bankr. Dkt. 15-33808, ECF No. 4; Stmt. Adj. §341(a) Mtg. of Creditors, Bankr. Dkt. 15-33808, ECF No. 11.)  At the meeting of creditors, the Trustee requested that the Appellants produce an itemization and valuation of certain valuable collectibles listed on Schedule B of the Appellants' petition.  (*See* Appellee's Br. at 3, ECF No. 8).  Receiving no response from the Appellants, on July 11, 2016, the Trustee filed a motion to compel production of the requested information and for sanctions ("Motion to Compel").  (*See id.*; Mot. to Compel, Bankr. Dkt. 15-33808, ECF No. 23.)  The Bankruptcy Court granted the Motion to Compel, without objection, on August 16, 2016 ("Order Compelling Debtors to Provide Information").  (*See* Appellee's Br. at 3, ECF No. 8; Order Granting Mot. to Compel, Bankr. Dkt. 15-33808, ECF No. 25.)

Previously, on April 1, 2016, the Appellants had received their discharge.  (*See* Appellants' Br. ¶ 4, ECF No. 1; Appellee's Br. at 3, ECF No. 8; Order Discharging Debtor, Bankr. Dkt. 15-33808, ECF No. 19.)  However, on December 28, 2016, the Trustee filed a complaint against the Appellants, seeking to have their discharge revoked for failing to comply with the Order Compelling Debtors to Provide Information.  (*See* Appellants' Reply Br. ¶ 2A, ECF No. 10; Appellee's Br. at 3, ECF No. 8; Compl., Adv. Pro. Dkt. 16-01900, ECF No. 1.)  The Appellants were served with the complaint on January 5, 2017, but failed to answer.  (*See* Appellee's Br. at 3, ECF No. 8; Cert. Service, Adv. Pro. Dkt. 16-01900, ECF No. 4.)  On March 8, 2017, the Trustee and the Appellants entered into a Stipulation of Settlement regarding the matter of the collectibles (the "Settlement").  (*See* Appellee's Br. at 3, ECF No. 8; Stip. Settlement, Adv. Pro. Dkt. 16-01900, ECF No. 8.)  The Settlement required the Appellants to: (1) provide the Trustee with a valuation and itemization of the collectibles listed on the Appellants' Schedule B; and (2) pay $750 in sanctions.  (*Id.*)  If the requested information and payment were not turned over by April 7,

2017, the Trustee could submit a form of judgment and the Appellants' discharge would be revoked for failing to obey a lawful order of the court. (*Id.*)

On April 17, 2017, the Appellants paid the sanction. (*See* Appellee's Br. at 4, ECF No. 8.) On April 17, 2017 and April 30, 2017, the Appellants produced some receipts for the purchase of pens and pictures of china, however, they failed to produce a full valuation. (*Id.*) Subsequently, on two separate occasions, on April 30 and June 29, 2017, the Trustee wrote the Appellants' counsel to reiterate his request for a valuation of the collectibles consistent with the parties' settlement. (*Id.*)

Having not received any response, on August 15, 2017, the Trustee requested that default judgment be entered against the Appellants, revoking their discharge for failure to comply with the terms of the Settlement. (Appellee's Br. at 4, ECF No. 8; Request to Enter Default J., Adv. Pro. Dkt. 16-01900, ECF No. 11.) On September 11, 2017, the Bankruptcy Court entered default judgment against the Appellants, revoking their discharge pursuant to 11 U.S.C. §727(a)(6) for failing to obey a lawful order of the court (the "Default Judgment"). (Appellee's Br. at 4, ECF No. 8; Default J., Adv. Pro. Dkt. 16-01900, ECF No. 12.)

On November 9, 2017, the Appellants filed a motion to reopen the adversary proceeding and reinstate the Appellants' discharge ("Motion to Reopen"). (*See* Appellants' Br. ¶ 5, ECF No. 1; Appellee's Br. at 4, ECF No. 8; Mot. Reopen Case, Adv. Pro. Dkt. 16-01900, ECF No. 14.) On November 27, 2017, the Trustee filed a certification opposing the Motion to Reopen, limited to the Appellants' request to set aside the Default Judgment insofar as the requested valuation of the collectibles still remained outstanding. (Appellee's Br. at 4, ECF No. 8; Cert. in Limited Opp'n, Adv. Pro. Dkt. 16-01900, ECF No. 15.) On December 6, 2017, the Bankruptcy Court entered an order denying the Motion to Reopen ("Order Denying Motion to Reopen"). (Appellee's Br. at 4,

ECF No. 8; Order Denying Mot., Adv. Pro. Dkt. 16-01900, ECF No. 16.)  The Appellants appealed neither the Order Denying Motion to Reopen nor any of the orders stemming from their unsuccessful 2015 bankruptcy proceedings.  The Appellants' bankruptcy case was closed on February 26, 2018.  (Appellee's Br. at 4, ECF No. 8; Final Decree, Bankr. Dkt. 15-33808, ECF No. 48.)

Almost two years later, on July 17, 2019, the Appellants filed a *pro se* Chapter 7 bankruptcy petition.  (*See* Appellee's Br. at 4, ECF No. 8; Chapter 7 Bankr. Pet., Bankr. Dkt. 19-23908, ECF No. 1.)  On August 6, 2019, the Appellants filed an adversary complaint against the Trustee seeking to have the revocation of their discharge deemed wrongful.  (*See* Compl. at 2, Adv. Pro. Dkt. 19-02086, ECF No. 1.)  On September 8, 2019, the Trustee filed a motion to dismiss the complaint for failure to state a claim upon which relief may be granted.  (*See* Appellee's Br. at 4, ECF No. 8; Mot. to Dismiss, Adv. Pro. Dkt. 19-02086, ECF No. 5.)  On October 3, 2019, the Bankruptcy Court entered an order dismissing the complaint for good cause ("Dismissal Order").  (Order Dismissing Compl., Adv. Pro. Dkt. 19-02086, ECF No. 9.)  The Dismissal Order, however, did not provide the basis for the dismissal.  (*Id.*)

On October 11, 2019, the Appellants filed a notice of appeal of the Dismissal Order, and the instant appeal ensued.  (*See* Appellee's Br at 5, ECF No. 8; Notice of Appeal, Adv. Pro. Dkt. 19-02086, ECF No. 11.)

## II.  DISCUSSION

This Court reviews a "bankruptcy court's legal determinations *de novo*, its factual findings for clear error and its exercise of discretion for abuse thereof."  *Interface Group-Nevada v. TWA (In re TWA)*, 145 F.3d 124, 131 (3d Cir. 1997).  On appeal, the Appellants argue that the Trustee failed to prove that they "personally, intentionally and willfully disobeyed, dishonored and

4

disrespected Honorable trustee," and, therefore, revocation of the Appellants' discharge was unwarranted. (Appellants' Reply Br. ¶ 5, ECF No. 10). The Appellants further argue that any non-compliance on their part can be attributed to the failure of their attorney to forward the requested documentation to the Trustee and that they should not receive such a harsh punishment for their counsel's alleged negligence.[1] (*See* Appellants' Br. ¶ 8, ECF No. 1.) I do not find any of the Appellants' arguments meritorious.

First, any fault of the Appellants' former counsel in the prior proceedings is imputed to them. Assuming that the Appellants produced the requested valuation to their counsel, and counsel failed to forward the documentation to the Trustee during the 2015 bankruptcy proceedings, this alone would not be grounds to set aside a final judgment of the Bankruptcy Court.[2] In *Link v. Wabash R. Co.*, the Supreme Court summarily rejected the argument that a client should not be

---

[1] The Appellants' brief also contains an allegation that they never had knowledge of, nor consented to, a conversion of their Chapter 7 case to a Chapter 13 case. (*See* Appellants' Br. ¶ 4, ECF No. 1.) It is unclear if this statement underlies a separate claim against the Appellee or merely furthers their allegation that their attorney mismanaged their case. In any event, with regard to the alleged improper conversion, it appears to be based on a typographical error in the Trustee's Complaint to Revoke Discharge. (*See* Compl., ¶ 1, Adv. Pro. Dkt. 16-01900, ECF No. 1.) Having reviewed the record, the incorrect reference to Chapter 13 only appeared once in that document and, in fact, no such conversion took place. Hence, this issue has no bearing here.

[2] The Trustee argues that the doctrines of claim preclusion and issue preclusion bar the current action. (*See* Appellee's Br. at 9-10, ECF No. 8.) Claim preclusion bars parties from advancing issues that "could have been raised and decided in a prior action—even if they were not actually litigated." *Lucky Brand Dungarees, Inc. v. Marcel Fashions Group, Inc.*, 140 S.Ct. 1589, 1594 (2020). As the name suggests, claim preclusion applies only when a "later suit advances the *same claim* as an earlier suit between the same parties." *Id.* (emphasis added). The related doctrine of issue preclusion prevents parties from relitigating identical issues that have already been fully litigated. *Bd. of Trs. of Trucking Emp. of New Jersey Welfare Fund, Inc. Pension Fund v. Centra*, 983 F.2d 495, 505 (3d Cir. 1992). For issue preclusion to apply, the specific issue in question must have been "*actually and necessarily* decided in a prior suit." *Mattson v. Hawkins (In re Hawkins)*, 231 B.R. 222, 231 (D.N.J. 1999) (emphasis added). Because the Appellants' allegation of attorney negligence is a new claim not previously raised, and because this issue was not actually and necessarily decided in the previous action brought by the Trustee, these preclusionary doctrines do not apply.

penalized for the unexcused conduct of his attorney. 370 U.S. 626, 633 (1962). In so doing, the Court noted that a client who voluntarily selects and retains counsel to represent him in an action cannot subsequently "avoid the consequences of the acts or omissions of this freely selected agent." *Id.* at 633-34. The Court went on to explain that any notion to the contrary would be "wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent . . . ." *Id.* at 634. To the extent counsel had any fault in the disposition of a case, a party's recourse is through filing of a malpractice claim. The Third Circuit has recognized a narrow exception to this general rule in cases where the "neglect [is] so gross that it is inexcusable." *Boughner v. Sec'y of Health, Educ. & Welfare*, 572 F.2d 976, 978 (3d Cir. 1977). In *Boughner*, the attorney failed to file a responsive pleading to fifty-two separate Motions for Summary Judgment, which the court found amounted "to nothing short of leaving his clients unrepresented." *Id.* at 977.

Here, there is nothing in the record to suggest that the alleged failure of counsel to forward documentation to the Trustee constitutes such egregious or gross negligence. Counsel's alleged neglect to turn over requested documentation is akin to the failure of counsel to respond to discovery requests, which conduct courts have repeatedly imputed to the attorney's clients. *See NHL v. Metro. Hockey Club*, 427 U.S. 639, 643 (1976); *see also Poulis v. State Farm Fire & Cas. Co.*, 747 F.2d 863, 870 (3d Cir. 1984). Accordingly, this Court does not find that the Bankruptcy Court committed clear error in finding that the allegations levied against the Appellants' former counsel do not rise to this demanding standard.[3]

---

[3] Nothing herein should suggest that the Appellants are without remedy. Appellants are free to pursue any and all state court remedies available to them, including, but not limited to, filing an action against their former counsel for malpractice. To be clear, however, this Court is not suggesting that such an action would be meritorious.

There is an even more fundamental principle that precludes Appellants' ability to bring these claims. It is black-letter law that a valid judgment is not open to collateral attack. *See Christmas v. Russell*, 72 U.S. 290, 296 (1866) ("it is matter of 'horn-book learning,' that [domestic judgments] cannot be called in question collaterally, supposing that the court which gave them had jurisdiction"); *Chicot Cty. Drainage Dist. v. Baxter State Bank*, 308 U.S. 371, 376 (1940); *Stoll v. Gottlieb*, 305 U.S. 165, 170 (1938); *Baltimore S.S. Co. v. Phillips*, 247 U.S. 316, 325 (1927); *see also Uni-Marts, LLC v. Sahakian (In re Uni-Marts, LLC)*, 404 B.R. 767, 788 (Bankr. D. Del. 2009) ("[i]t is well settled that a final judgment in a civil action may be challenged on direct review but cannot be collaterally attacked in a subsequent proceeding"); *and In re La Paloma Generating Co.*, 588 B.R. 695, 721 (Bankr. D. Del. 2018). This principle ensures the finality of court decisions that determine the rights of parties, which is integral to our judicial system. *See Stoll*, 305 U.S at 172 (noting that "it is just as important that there should be a place to end as that there should be a place to begin litigation"). There is no question that this cardinal principle applies equally to judgments issued by bankruptcy courts. *See Chicot Cty.*, 308 U.S. at 376 (noting that while "the lower federal courts are all courts of limited jurisdiction" they are nonetheless courts with authority, and their rulings, "while open to direct review, may not be assailed collaterally"); *see also United Student Aid Funds, Inc. v. Espinosa*, 130 S.Ct. 1367, 1376 (2009).

An action constitutes a collateral attack "if it must in some fashion overrule a previous judgment." *Miller v. Meinhard-Commercial Corp.*, 462 F.2d 358, 360 (5th Cir. 1972). And the previous judgment is valid if the deciding court had jurisdiction to decide every question at issue in the case. *See Hickey's Lessee v. Stewart*, 44 U.S. 750, 762 (1845); *see also Mitchell v. St. Maxent's Lessee*, 71 U.S. 237, 242 (1866) ("it is a well-settled principle of law . . . that the decree

7

or judgment of a court, having jurisdiction, is binding until reversed, and cannot be collaterally attacked").

Here, there is no doubt that the Bankruptcy Court had jurisdiction to enter both the Default Judgment and the Dismissal Order.  *See* 28 U.S.C. §157(b)(2) (included in the list of "core proceedings" which bankruptcy judges may hear and determine are matters relating to the "dischargeability of particular debts" and "objections to discharge").  Despite the fact that the appeal is stylized as an appeal of the Dismissal Order, it is clear that Appellants are attempting to collaterally attack the Default Judgment revoking their discharge on the merits, which occurred in 2017. (*See* Appellants' Br. at 4, ECF No. 1 (only relief requested is "request for discharge"); *see also* Appellants' Reply Br. ¶ 7, ECF No. 10 (requesting the court order "revoke discharge to be vacated and grant discharge to Plaintiffs")).  Indeed, the Default Judgment is a valid judgment issued by the Bankruptcy Court, and thus, is not open to such collateral attacks.  Rather, the Appellants had two possible recourses available to them at the time of the unfavorable decision: (1) they could have filed an appeal of the Default Judgment; or (2) they could have filed an appeal of the Order Denying Motion to Reopen.  The time to appeal these orders has long expired (*See* Fed. R. Bankr. P. 8002(a)(1)).  For these reasons, this Court cannot review the Default Judgment revoking the Appellants' discharge as it is a final judgment.[4]

Finally, the Appellants' decision to file a new complaint against the Trustee in a subsequent proceeding, seeking to have their prior 2017 revocation set aside, rather than appealing either the

---

[4] The Adversary Proceeding Cover Sheet, filed with the Appellants' adversary complaint, identifies as the Nature of Suit, "Recovery of money/property - §542 turnover of property." (*See* Adversary Proceeding Cover Sheet., Bankr. Dkt. 19-23908, ECF No. 24.)  Because neither the complaint nor the Appellants' brief raises any arguments for recovery of property under Section 542 of the Bankruptcy Code, this Court assumes that this cause of action was either selected in error or the claim has been abandoned.

Default Judgment or the Order Denying Motion to Reopen, is procedurally defective and a misunderstanding of Federal Practice.  The Appellants simply cannot obtain the relief they seek, *i.e.*, reversal of the discharge revocation by the Bankruptcy Court, by filing a complaint against the Trustee, because he is without authority to overturn the Bankruptcy Court's judgment.  While a bankruptcy trustee may *request* that the bankruptcy court revoke a debtor's discharge for one of the reasons delineated in 11 U.S.C. §727(d), ultimately, the power to revoke a discharge is delegated to the bankruptcy court, alone.  *See* 11 U.S.C. §727(a) ("the *court* shall grant the debtor a discharge, unless . . .) (emphasis added).  Accordingly, even if the Appellants were to prove meritorious in this appeal, there is nothing the Trustee could do to afford them the relief requested.

### III.  CONCLUSION

For the foregoing reasons, Appellants' appeal is **DISMISSED**.

Dated: August 3, 2020                                                      /s/ Freda L. Wolfson
                                                                                              Freda L. Wolfson
                                                                                              Chief U.S. District Judge

9